UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GRACE COMMUNITY CHURCH, an
ecclesiastical corporation, and BETH
OAKLEY, an individual,

   Plaintiffs,

v.

LENNOX TOWNSHIP, a Michigan
municipal body, the LENNOX TOWNSHIP
PLANNING COMMISSION, a Michigan
municipal body, KAREN TURCHI, in her
individual capacity, and LOU IANTIELLI,
in his individual capacity, and MIKE
ODROBINA,

   Defendants.

Case Number: 07-14674
HON. MARIANNE O. BATTANI

                /

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 56(c) AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

  Grace Community Church (Grace Church or Church) and Beth Oakley, a former resident of the Church's Christian Discipleship Center, filed suit against Defendants Lenox Township, its Planning Commission, and individual defendants, Karen Turchi, Lou Ianitelli, and Mike Odrobina for claims arising under federal and state law. Before the Court is Defendants' Motion for Summary Judgment (Doc. No. 60), Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 68), and Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. No. 61). For the reasons that follow, Defendants' Motion is GRANTED and Plaintiffs motions are DENIED.

**I. STATEMENT OF FACTS/PROCEDURAL HISTORY**

This is Grace Church's second suit against Lenox Township. Because familiarity with the earlier suit aids in the resolution of the dispute before this Court, the factual background of the 2006 lawsuit as detailed in Grace Cmty. Church v. Lenox Twp., 544 F.3d 609 (6th Cir. 2008) (Grace I), follows.

> Grace Community Church is located in Lenox Township, Macomb County, approximately 30 miles north of Detroit. The Church is pastored by Reverend William Pacey, an ordained minister of the Anchor Bay Evangelistic Association. Rev. Pacey established Grace Community Church in 1996 "to provide a place of worship for those who 'just didn't fit in' to a normal church setting." Pacey aff. at ¶ 3, JA 317. Grace Community Church views people's emotional and substance abuse problems as stemming from a strained personal relationship with God. Id. at ¶¶ 6-7. To assist people in learning to trust God, the Church began operating residential programs at various sites. In 2004, the Church purchased property on 30 Mile Road in Lenox Township that had previously been home to a Catholic monastery and later, a residential nursing care facility. The Church intended to consolidate its worship and residential counseling ministries under one roof.
>
> The Church applied to the Lenox Township Planning Commission for a special land use permit in early 2005. In June 2005, the Commission approved the application for operation of the Church, but withheld action regarding the residential facility pending receipt of further information from Rev. Pacey and consideration of appropriate conditions. At its August 22, 2005 meeting, the Commission granted the permit for operation of the residential program, the Christian Discipleship Center, subject to various conditions. The conditions included requirements, inter alia: that residents be pre-screened to determine that they are of a "desirable nature" and pose no danger to the surrounding community; that the facility not be used as a halfway house or to house persons undergoing alcohol or drug rehabilitation; and that, in the event of a complaint suggesting a violation of the conditions, a representative of the Church appear before the Commission to show cause why the permit should not be revoked.
>
> At its very next meeting, on September 26, 2005, the Commission received information to the effect that, contrary to assurances given by Rev. Pacey, substance abuse counseling was being provided at the Christian Discipleship Center on 30 Mile Road. The information came in the form of a report from the Township attorney, Terry Welch, who had

been advised of a complaint received by the Macomb County Sheriff.  The Sheriff's Department had received the complaint from Ronald Riggi, whose nineteen year-old daughter, Robin, had been released from the Macomb County Jail and referred by local District Judge Denis R. LeDuc to Grace Community Church for substance abuse counseling.  Riggi and his daughter had met with Rev. Pacey at the 30 Mile Road site.  Riggi had paid the $250 application fee charged by Rev. Pacey with the understanding that his daughter would receive substance abuse counseling.  When Riggi learned that his daughter had not received any substance abuse counseling during her first week in the program, Riggi confronted Rev. Pacey.  This confrontation led to the termination of Robin's participation in the program and to Riggi's complaint to the Sheriff's Department about "possible fraudulent or suspicious activities." Welch also reported that when this information was conveyed to Township officials, Planning Commission member Karen Turchi undertook an internet search and found several descriptions of Grace House in New Haven (adjacent to Lenox Township) as a halfway house or 3/4-way house assisting people in overcoming emotional and physical addictions.

In response to this information, Rev. Pacey refused to comment on the incident with Ronald Riggi and his daughter.  He maintained, however, that he had not provided any substance abuse counseling at the 30 Mile Road site and that the special use permit conditions placed on Grace Community Church (without mentioning those imposed on the Christian Discipleship Center) had been met.  One of the Commission members thereupon made a motion to revoke the special use permit for the Christian Discipleship Center, which carried with little discussion.

The Church made no attempt to obtain reconsideration of the revocation decision, did not apply for reinstatement of the special use permit, and did not appeal the revocation decision to the Zoning Board of Appeals. Almost one year later, Grace Community Church commenced this action by filing its complaint in the Eastern District of Michigan on August 7, 2006.  The complaint names Lenox Township as defendant and contains four counts, including claims under [the Religious Land Use and Institutionalized Persons Act] RLUIPA and the Religious Freedom Restoration Act, a claim for denial of equal protection, and a claim for damages based on unconstitutional taking and tortious interference with economic advantage.

After the claim for relief under the Religious Freedom Restoration Act was voluntarily dismissed, both parties filed motions for summary judgment. The Township moved for summary judgment on all three remaining claims contending they should be dismissed for lack of ripeness.  The Church moved for partial summary judgment contending it was entitled to judgment as a matter of law on its claim under RLUIPA.  The district court

> conducted a hearing on the motions on August 28, 2007 and issued its ruling three days later, granting the Township's motion and denying the Church's. The court reasoned that the Church, by failing to pursue its remedies with the Zoning Board of Appeals, failed to obtain a final decision on its entitlement to the permit. The court therefore dismissed the action as unripe, without prejudice.

Grace Cmty, Church, 544 F.3d at 611-12. The appellate court affirmed the district court's holding that the action was nonjusticiable for lack of ripeness in a decision dated October 10, 2008.

In October 2007, while Grace I was pending, Grace Church and Beth Oakley, filed the instant suit.[1] In this lawsuit (Grace II), Plaintiffs allege claims for Mandamus and Superintending Control (Count I), Civil Rights Violations under the United States Constitution (Count II), Civil Rights Violations under the Michigan Constitution (Count III), Violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, et seq. (Count IV), Violation of the Fair Housing Act (FHA), 42 U.S.C. § 36045 (Count V), Defamation against Defendant Odrobina (Count VI)[2], and Civil Conspiracy (Count VII).

In Grace II, Plaintiffs re-allege many of the facts giving rise to the first lawsuit and rely on those as well as subsequent events as the basis for the new claims. For example, they assert that Grace Church was required to submit a special approval land use application in December 2004 for two uses within one building, even though the

---

[1] Shortly thereafter, the case was reassigned as a companion case to Grace I to the Hon. Paul Borman. In June 2008, Judge Borman granted Plaintiff's request to stay the case. The case subsequently was reassigned to this Judge.

[2] Pursuant to Stipulation and Order, this count was dismissed.

uses were the same. Compl., ¶ 21. There is no dispute that the appellate court was aware of the fact that the Planning Commission considered the application for several months without making a decision on the application; that the Planning Commission approved the proposed use for the for the Church only at the June 27, 2005, meeting; that the special land use permit for the CDC was approved in August 2005, and revoked the following month based on the Commission's finding that Grace Church was conducting drug and alcohol counseling on the property in violation of the permit.

While the Grace I appeal was pending, the Planning Commission again considered the special use permit for the CDC at a September 2007 meeting. A decision on the permit was tabled. The following month, the Planning Commission again tabled a decision, and Plaintiffs filed Grace II.

Plaintiffs assert in the new complaint that the September and October 2007 meetings show the Grace Church would never be allowed to operate the CDC without judicial intervention. See Compl., ¶ 45. The CDC Special Use Permit (SUP) was re-approved at the November 26, 2007, Township meeting. According to the transcript of the meeting,

> As promised by Pastor Pacey and his attorney, there shall be no form of any residential drug and alcohol rehabilitation counseling at the facility in any way, shape or form or at any stage of the person's rehabilitation. Likewise, pursuant to their own promises, the facility shall never be used for any form of court referrals, court probation or as a halfway house. If a person is referred there by a court, the use of a form in which that person states that they are not receiving any drugs and alcohol rehabilitation shall be in violation of the reapproval.
>
> [ ] The second land use permit shall be effective for a period of 12 months. If there are any complaints by either Lenox Township residents or Lenox Township official suggesting that good cause exists to believe that any of these conditions have been breached, the Discipleship Center

> shall be notified. . . .
>
> * * *
>
> Prior to the time that a Certificate of Occupancy is granted, the applicant must comply with all conditions imposed by the Macomb County Health Department. Prior to that time a Certificate of Occupancy is granted, the applicant must comply with the building code, fire code for an R-1 use classification as approved by Lenox Township Building Department and Lenox Township Fire Department. In this regard, the applicants understand that the residential center requires a fire sprinkling system or some engineering alternative that is approved by the Lenox Township building Department and the Lenox Township Fire Department.

Pl.'s Ex. 11. The parties subsequent conduct is discussed as needed in the analysis of the motions.

## III. STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997). When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.' " Bell Atl. Corp. v. Twombley, 550 U.S. 544, 570 (2007). "Under general pleading standards, the facts alleged in the complaint need not be detailed, although 'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.' " Id.

6

In <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), the Supreme Court further refined the standard, articulating a "two-pronged approach" to be used to determine whether a complaint states a claim upon which relief may be granted. <u>Id.</u> at 1950. First, a court should "identify[] the allegations in the complaint that are not entitled to the assumption of truth." <u>Id.</u> at 1951. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief, and must be disregarded. <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555). Second, the Court must scrutinize these facts to see if they "plausibly suggest an entitlement to relief." <u>Iqbal</u>, 129 S. Ct. at 1951. Although even "unrealistic or nonsensical" factual allegations must be credited, the Court must determine whether "more likely explanations" exist for these facts than the inference required to support the plaintiff's legal theory. <u>Id.</u> at 1950-51.

Pursuant to Rule 56(c), a motion for summary judgment is to be granted only if the evidence indicates that no genuine issue of material fact exists. FED. R. CIV. P. 56(c). To avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for him at trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).

The sufficiency of the evidence is to be tested against the substantive standard of proof that would control at trial. <u>Anderson</u>, 477 U.S. 242. The moving party has the burden of showing that there is an absence of evidence to support the non-moving party's case. <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or

denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. In disposing of a motion for summary judgment, this Court must consider the evidence in the light most favorable to the nonmoving party, but may weigh competing inferences for their persuasiveness. Matsushita, 475 U.S. at 574.

## IV. ANALYSIS

At the outset, the Court notes that in their responsive pleading, Plaintiffs agreed that the due process claim advanced in Count II must be dismissed and also agreed to dismiss Plaintiff Beth Oakley. Accordingly, those issues are not addressed below. Because Defendants' motion raises issues of justiciability, it is addressed before Plaintiffs' dispositive motion, which requests a decision on the merits.

The question of ripeness raises issues of Article III's case or controversy requirement as well as prudential limitations on the exercise of judicial authority. See Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 733 n. 7 (1997). It requires a court to decide whether it should defer consideration until such time as the claims have matured into a more appropriate form before the court. Abbott Labs. v. Gardner, 387 U.S. 136, 148 (1967).

### A. Ripeness (Counts II-V)

In Counts II through V, Plaintiffs claim that Defendants violated their state and federal civil rights, RLUIPA, and FHA by including certain conditions in the CDC SUP. The parties dispute whether these claims are ripe.

In Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172,

186 (1985), the Supreme Court held that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulation has reached a final decision regarding the application of the regulation to the property at issue." This reasoning has been extended beyond a takings claim to a claim under RLUIPA. Grace Community Church, 544 F.3d 609 at 615 (citing Insomnia Inc. v. City of Memphis, 278 Fed. Appx. 609, 613-14, 2008 WL 2121053 (6th Cir. May 20, 2008) (observing that the Sixth Circuit has applied the finality requirement to equal protection, substantive and procedural due process and takings claims arising from land use disputes).

"In determining whether a claim is ripe for review, courts consider three factors: '(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings.' " Insomnia, at *3, 278 Fed. Appx. 609, 612 (quoting Warshak v. United States, 490 F.3d 455, 467 (6th Cir. 2007)).

Plaintiffs assert that they have satisfied the ripeness requirements. Specifically, they claim that Defendants ignored their efforts to appeal the November 2007 decision re-approving the CDC SUP with conditions. As support for their position they rely on a letter dated December 3, 2007, written by Plaintiffs' counsel to Defendants' counsel, indicating that it was not clear whether the decision was a final one, and requesting confirmation whether the decision "[was] final, or, if the conditions can be appealed to the Zoning Board of Appeals or another body within Lenox Township." Pls.' Ex. 14. Plaintiffs' counsel also included a request that in the event the decision was not a final

decision, that the correspondence serve as Grace Community Church's appeal to the Zoning Board of Appeals or any other agency with respect to the decision of the Planning Commission." Id.

According to Plaintiffs, Defendants never responded to their inquiry about an appeal of the decision. For this reason, Plaintiffs conclude that Lenox Township has "reached a final decision regarding the application of the regulations" to the CDC, and they may proceed on their claims in the judicial forum. See Insomnia, 278 Fed. Appx. at 612. They assert that the factual record is sufficiently developed to produce a fair adjudication of the merits of the claim, that the harm they alleged has come to pass, and there is immense hardship to the parties if judicial relief is denied. In sum, their position is that they have satisfied the ripeness requirements.

The record does not support Plaintiffs' assertion regarding the finality of the record. First and foremost, the Court declines to equate an expression of an intent to appeal with an appeal. Here, Plaintiffs failed to appeal the CDC use condition regarding drug and alcohol counseling, or any other condition placed on the permit. Nor did Plaintiffs seek a variance.

Moreover, contrary to Plaintiffs' assertion that Defendants did not respond to their December 3, 2007, letter, thereby absolving them of any need to take further action, in a letter dated December 10, 2007, Lenox Township identified and provided those sections of the building code and fire code in dispute. The correspondence also included an appeal application and a list of current members of the Construction Board of Appeals. See Defs.' Reply, Ex. A. The letter further suggests that the driveway capping/paving issue might be an impediment to the CDC receiving a Certificate of Occupancy. Id.

10

During oral argument, Plaintiffs' counsel disputed his receipt of this letter. Thereafter, Defendants provided the Court with the Transmit Confirmation Report, dated December 11, 2007, confirming the facsimile transmittal of the letter. See Defendants' Supplemental Document Submission, Ex. A.

Defendants also provided a letter authored by Plaintiff's counsel dated December 13, 2007, which references a December 10, 2007, letter from Defendants. See Defendants' Supplemental Document Submission, Ex. B. The Court does not find the December 13, 2007, letter evidences receipt of the December 10, 2007, faxed letter. Plaintiffs suggest that their letter was sent in response to a different December 10, 2007, letter. The content suggests Plaintiffs are correct. See Plaintiffs' Reply to Defendants' Addendum, Ex. A, December 10, 2007, letter with attached Special Land Use Permit.[3] This dispute is immaterial because the Transmit Confirmation Report is sufficient, in and of itself, to undermines Plaintiffs' position that a final decision has been made.

The Transmit Confirmation Report likewise derails Plaintiffs' contention that Defendants have not complied with their statutory obligation to hear an appeal within thirty days of its submission. See MICH. COMP. LAWS § 125.1514. Although § 125.1514 requires a board of appeals to "hear the appeal and render and file its decision with a statement of reasons for the decision with the enforcing agency from whom the appeal was taken not more than 30 days after submission of the appeal," in this case Plaintiffs'

---

[3]In their Reply to Defendants' Addendum (Doc. No. 83), Plaintiffs ask the Court to impose financial sanctions under Rule 11, because of Defendants attempt to present false evidence. The Court notes that the request does not comport with the procedural requirements articulated in Rule 11. See FED. R. CIV. P. 11.

11

reliance on the statute is misplaced. The language immediately preceding that cited by Plaintiffs provides that before a decision is made, "an interested person, or the person's authorized agent, must appeal in writing to the board of appeals." Id.

Although the Court agrees that Plaintiffs need not wait endlessly for an offer to hear an appeal, the record is void of any evidence that Plaintiffs made an effort beyond the December 3, 2007, letter to perfect an appeal. Plaintiffs bear the burden of appealing a decision, Defendants do not bear a burden to solicit an appeal.

In addition, the Court finds the record is undeveloped relative to Plaintiffs' assertion that the conditions in the SUP, rather than the revocation of the SUP, violates their rights. In Grace I, Plaintiffs appealed the revocation of the CDC SUP, not the conditions that were encompassed in the SUP. Consequently, the Planning Commission hearings were limited to the validity of the revocation, not the issues advanced in Grace II.

Accordingly, the Court finds that Plaintiffs cannot meet the three requirements. There is no basis for this Court to conclude that the CDC will never be allowed to operate. Further, Defendants have not issued a final decision, conduct that seemingly would foster an understanding of how the special conditions relate to the property, and why those conditions have been imposed. Finally, the Court notes that Defendants have indicated that Plaintiffs may appeal the conditions. As noted in Grace I, the finality requirement is particularly important in land use regulation, id. at 618 (citing Insomnia, 2008 WL 2121053 at *3, 278 Fed.Appx. 609, 612, and the Court is unwilling to excuse the requirement here.

Because the Court finds these claims are not ripe for review, it declines to

address the other arguments raised in Defendants' motion as to Counts II-V. However, Plaintiffs failure to take advantage of the remedies that may be made available by appealing the conditions to the Planning Commission and/or the Zoning Board of Appeals does impact Count I, which requests the Court issue a writ of mandamus or order of superintending control. Under Michigan law, when "another adequate remedy is available to the party seeking the order, a complaint for superintending control may not be filed." See MICH. COMP. LAWS § 3.302(b). Accordingly, the Court dismisses without prejudice Plaintiffs' request for mandamus and superintending control (Count I). Further, it denies Plaintiffs' request for a judgment on the merits of their claims under RLUIPA and FHA.

### B. VIABILITY OF CONSPIRACY CLAIM

In Count VII of their Complaint, Plaintiff allege that Defendants "acted in concert to deny the civil rights of the plaintiffs by designing and implementing a plan to deny Plaintiffs the right they have to use the property as a Christian Discipleship Center in violation of the Michigan Constitution, the Fair Housing Act and the Religious Land Use and Institutionalized Persons Act." Compl. at ¶ 70, p. 27. Defendants challenge the viability of the claim procedurally and substantively. Specifically, they raise ripeness, the sufficiency of the factual allegations, and the intracorporate conspiracy doctrine.

Plaintiffs' two paragraph response is limited to the second two grounds. At the outset, they maintain that the intracorporate conspiracy doctrine does not apply to their conspiracy claim, which is grounded in state, not federal, law. The intracorporate conspiracy doctrine provides that where all of the defendants are members of the same entity, there are not two separate people to form a conspiracy. See Hull v. Cuyahoga

Valley Joint Vocational Sch. Dist. Bd. of Educ., 926 F.2d 505, 509-510 (6th Cir. 1991) (noting that "[i]t is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."). The doctrine originated in the antitrust context and has been applied to claims brought under 42 U.S.C. § 1985(3) (creating a civil cause of action against individuals who conspire to deprive an individual of equal protection of the laws).

Defendants have cited no published Michigan authority adopting this theory to the claim advanced in this case. But see Tropf v. Holzman & Holzman, No. 257019, 2006 WL 120377 (Mich. Ct. App. Jan. 17, 2006) (holding intra-corporate trust doctrine bars action for a civil conspiracy between a corporation and its agents acting within the scope of employment); Blair v. Checker Cab Co., 558 N.W.2d 439, 442-43 (Mich. Ct. App. 1996) (carving out an exception to this rule when corporate agents have a "personal stake" or motive in the conspiracy, and therefore are acting on their own behalf). Therefore, the Court finds Defendants have not met their burden to show they are entitled to judgment as a matter of law.

In addressing Defendants' challenge to the sufficiency of their allegations of conspiracy, Plaintiffs recite the elements of a civil conspiracy claim and refer the Court to ¶ 70 of their Complaint. They add that "Defendants together set out to destroy Grace Church and deny it the right to use its property for a lawful purpose. . . ." Pls.' Resp. at p. 23.

The elements of a civil conspiracy are a concerted action by a combination of two or more persons to accomplish an unlawful purpose or a lawful purpose by unlawful

14

means. Fenestra, Inc. v. Gulf American Land Corp., 141 N.W.2d 36 (Mich. 1966). Although an assessment of the sufficiency of the allegations requires consideration of the elements of the claim, more is needed. Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). Certainly, a Rule 12(b)(6) challenge to a complaint cannot succeed merely because of a lack of detailed factual allegations. Nevertheless, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Although well-pleaded facts must be accepted as true for purposes of determining whether the complaint states a plausible claim for relief, the court is under no obligation to assume the truth of legal conclusions.

Paragraph 90, standing alone, merely recites the required elements of a civil conspiracy claim and stands as a legal conclusion. Although Count VII incorporates all of the other allegations of the complaint, Plaintiffs have not directed the Court to any other specific factual allegations. It is not the duty of this Court to scour the complaint for the allegations needed to sustain the claim.

Finally, Plaintiffs do not respond to the argument that if the underlying claims are dismissed, the conspiracy claim must be as well. According to Defendants, a claim of civil conspiracy "may not exist in the air; rather, it is necessary to prove a separate, actionable tort." Early Detection Center, PC v. New York Life Ins. Co.,403 N.W.2d 830, 836 (Mich. Ct. App. 1986) (citation omitted). Advocacy Org. for Patients & Providers v. Auto Club Ass'n, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003).

In this case, unlike the cases cited by Defendants, the underlying torts have not been dismissed on substantive grounds. The Court merely has determined the underlying "tort" claims are not ripe. However, until Plaintiffs are free to prove an

underlying actionable tort, the Court finds the conspiracy claim, which is entangled in the merits of the underlying tort claims, cannot be advanced at this time. Accordingly, the Court finds it is not ripe and must be dismissed.

### C. PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiffs seek leave to file an amended complaint. The governing rule, FED. R. CIV. P. 15(a), provides that "[t]he court should freely give leave when justice so requires." In deciding motions brought under this rule, the courts look to the factors first articulated in Foman v. Davis, 371 U.S. 178, 182 (1962), and revisited in Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31(1971). Denial of a motion to amend is warranted where there has been undue delay or bad faith in making the motion, when granting the motion would unduly prejudice the nonmoving party, or when the proposed amendment would be futile.

According to Plaintiffs, the amended complaint "merely flesh[es] out claims [they] already alleged in [the] original complaint in more defined terms. . . ." Pls.' Reply to Defs.' Resp. to Motion for Leave to File a First Amended Complaint at 1. For purposes of the resolution of this motion, the Court accepts this characterization as accurate and finds that last factor--futility--warrants a denial of Plaintiff's request. More particularly, here, the Court already has found that Plaintiffs' claims are not ripe. Therefore, an amended complaint that mere adds detail to the claims does not alter the analysis.

### V. CONCLUSION

16

For the reasons discussed above, the Court **GRANTS** Defendants' motion and **DENIES** Plaintiffs' motions.

**IT IS SO ORDERED.**

s/Marianne O. Battani<br>MARIANNE O. BATTANI<br>UNITED STATES DISTRICT JUDGE

DATE: <u>September 24, 2009</u>

CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or e-filed to counsel of record on this date.

s/Bernadette M. Thebolt<br>Case Manager